Anthony J. Di Giovanna, J.
This is an application for an injunction pendente lite against the defendant, its officers, agents, servants, employees and attorneys and all other persons in participation with them, from directly or indirectly selling or otherwise disposing of certain vinyl wall tiles, to restrain them from advertising to the public in any way that it has for sale or is offering for sale any of those vinyl wall tiles. Injunction is sought against the defendant Harry Sarrel from participating with the corporate defendant directly or indirectly in the sale of those vinyl wall tiles.
The moving affidavit alleges that the vinyl wall tiles in question were sold by the plaintiff to the defendant Sarrel as “ seconds ” with an undertaking by Sarrel not to dispose of them for wall use because of the inadequacy of the glue backing. The allegation is made that Sarrel, in violation of his undertaking, sold these “ seconds ” to Nathan Pintchik, Inc.; that Pintchik had knowledge of Barrel’s undertaking with the plaintiff and of the fact that the tiles were of inferior quality; that Pintchik has offered the wall tiles for sale to the general public as first quality merchandise usable for the purposes intended for the use of first-class merchandise. As a matter of fact Pintchik has caused advertisements to be published in the Daily News advising the public that it could get a bargain in vinyl wall tiles at a greatly reduced cost and that said tiles were usable in the same manner as regular tiles manufactured by plaintiff.
These vinyl tiles are of the “ do-it-yourself ” variety. The plaintiff’s Bolta Products Division initiated a program of con *667 sumer advertising and sales promotion in 1953 wherein it emphasized the pre-pasted, ready-to-nse characteristic of these vinyl wall tiles and the ease and simplicity of installing snch tiles in homes. The manufacturer of these wall tiles is covered by regularly issued patents. Large sums of money have been expended by the plaintiff to advertise nationally the name “ Bolta ” and the pre-pasted feature of “Boita-Wall” tiles which enable the user to “ just wet the back ” and press the tile in place on the wall or ceiling. Advertisements have appeared in all of the popular magazines which generally reach that segment of the public which is interested in “ do-it-yourself ” projects. As a matter of fact Pintchik has from time to time purchased large quantities of these first quality tiles for use and sale in his place of business.
In 1955 the plaintiff discovered that somehow a lot had been so poorly manufactured in that insufficient paste had been put on the backs so as to make it improbable that the tiles would permanently adhere to walls. Its engineers discovered that changes in humidity would affect these titles in such a way as to cause them to come off the walls. Plaintiff contacted all of its distributors and authorized the return of all of the unsold Bolta-Wall tiles of those identified lots. In addition, plaintiff adjusted all the consumer complaints concerning those particular lots. In accordance with that program plaintiff recovered 230.040 wall tiles. They were stored by the plaintiff and not resold until June, 1957.
The defendant Harry Barrel represented to the plaintiff, in 1957, that he had a customer, a lamp manufacturer, who could use these vinyl tiles to cover lamp bases and that such use would not be hampered by the defect which made them unusable as wall tiles. Thereupon plaintiff sold and delivered to Barrel 230.040 of these vinyl wall tiles as “ seconds.” The price was 3 cents a tile which was less than half of the plaintiff’s normal sales price, while the normal retail price is about 15 cents per tile. Complaint is made that Barrel, although fully aware of the nature of the defect and their unsuitability for the “ do-it-yourself ” market, and that although he accepted the goods under an invoice which stated that this material would not ‘ ‘ be used or resold for use as a wall covering ’ ’, passed them on to Pintchik without such restriction. The sale to Barrel was made on June 14, 1957.
Thereafter Pintchik ran an advertisement in the Sunday News advertising the sale of those very tiles at 7 cents per tile. Investigation disclosed to the plaintiff that the material advertised by Pintchik was the very same “ seconds ” which Barrel *668 had purchased from the plaintiff. Plaintiff’s sales manager, who made the moving affidavit, says that on July 20, 1957 he spoke directly to Mr. Jack Pintchik, the son of the president of the Pintchik corporation, and he told him that he had purchased the material from a lamp manufacturer. In other words, Sarrel claims to have sold the vinyl to a lamp manufacturer and Pintchik claims to have purchased it from a lamp manufacturer. Mr. Hoffman, the sales manager, says that he told Mr. Pintchik about the origin of the tiles and the unsuitability thereof for the ‘ ‘ do-it-yourself ’ ’ market. Mr. Pintchik told him that he would sell more paste with the tiles but Mr. Hoffman told him that that was not feasible because of the lack of skill of the ordinary consumer. He then says that he offered to repurchase the material from him and that Mr. Pintchik agreed to the offer although no specific price was then mentioned but he further agreed not to advertise or sell the tiles while the negotiations were going on.
On September 4,1957 Mr. Hoffman again visited Mr. Pintchik and agreed to pay him one-half cent per tile profit. While in his office Mr. Hoffman swears that he saw in Mr. Pintchik’s office an invoice from Sarrel to the defendant and saw on it no indication that a third party or intermediary intervened between Sarrel and Pintchik because the invoice covered the exact amount of material that the plaintiff had originally shipped to Mr. Sarrel. Thereafter defendant billed the plaintiff at three and a half cents for each tile plus the trucking charges and the bill was accompanied with a general release drawn by the defendant’s lawyers. This release required plaintiff to release not only the defendant but “ all persons, firms and corporations that preceded them in interests in connection with the Bolta Flex ”. Plaintiff claims that the terms of this proposed release were not within the original bargain made with the defendant and were unsatisfactory to the plaintiff because it attempted to release Sarrel who had, so the plaintiff says, broken his agreement with the plaintiff by passing the materials on to Pintchik. The negotiations fell by the Avayside because of the refusal of the Pintchiks to accept the payment for the materials without a general release covering everybody. Then in October, 1957 several advertisements were placed in the Daily Netos which advertised these particular tiles for closeouts at 7 cents instead of the regular price of 15 cents. Furthermore, this advertisement contained the phrase £ ‘ just wet and hang, it’s prepasted”. To make sure that its complaint concerning the defendant Avas properly grounded, a purchase was *669 made by one of the plaintiff’s employees on November 1, 1957 of 54 of the advertised tiles at 7 cents per tile and these were of the “ seconds.” The supporting affidavits bear out the assertions of the plaintiff with respect to many allegations set forth above. Copies of the advertisements are included in the moving papers and it is apparent from them that no mention is made concerning “ seconds.”
Defendant Sarrel did not appear in opposition to this motion. Why he was advised not to appear or why he did not appear is not stated in any of the papers submitted in opposition. The affidavit in opposition of Jack Pintchik denies many of the facts alleged in the moving papers. He repeats the plaintiff’s allegations concerning the sale by the plaintiff to Harry Sarrel upon the express condition that the tiles would not be resold as regular first quality merchandise. Further, he repeats the allegation that Sarrel had acted in concert with the defendant and the allegation that defendant is presently selling the wall tiles as firsts, which allegedly are “ seconds.” Denial is made by the defendant that it purchased the tiles from Sarrel. He swears that they were purchased from a source entirely separate and apart from Sarrel but refuses to state the source of purchase.
Under the circumstances such refusal is hardly understandable. The defendant is compelled to tell where he purchased these tiles and cannot refuse to state so only because he seeks to protect the other. The court must find from the allegations of the moving papers that such purchases were in fact made from Sarrel. Such finding would be sufficient for the granting of an injunction pendente lite. From the fact that Sarrel has not appeared in this action the court is compelled to infer admissions by him of the allegations of the moving papers. The defendant seeks to excuse the sale of this merchandise on the basis that not once has a complaint been made by any customer that the merchandise was not usable and did not meet the requirements of first-class merchandise. That is not an excuse under the circumstances as set forth in these papers. Implicit therein is an admission by the defendant that it has sold these tiles of second quality. Denial is made by the defendant that when it purchased these wall tiles it had any knowledge or information that they were “ seconds ” or that they were restricted to their eventual use by them. That is, of course, in contradiction of the fact that they caused these “ seconds ” to be advertised for sale after the negotiations with Hoffman fell through. Defendant denies the existence of the invoice *670 mentioned by the plaintiff but again Sarrel has not appeared to deny that. Admission is made that on other occasions the defendant has purchased surplus commodities from Sarrel.
The court is of the opinion that sufficient is set forth in these papers to warrant the granting of an injunction pendente lite against the defendants. Aside from the harm which can be done to the plaintiff’s business standing, the court is concerned with the harm which can be done to the 1 ‘ do-it-yourself ’ ’ public. To permit the sale of these items under these circumstances would make the public the victim if the plaintiff’s allegations are eventually proven to be true. Consequently the motion for injunction pendente lite is granted on condition that this case be tried at the January, 1958 Term of Special Term, Part III, and the plaintiff is directed to cause this case to be placed on the calendar for that term. If the parties can agree in the order to be settled herein to try this case before a particular official referee so that he can hear and determine all of the issues herein, the order may then provide therefor. Settle order on notice.